Anesthesiologists PLLC v. United Healthcare Insurance et al. Good morning, Mr. Breitenbach, I see we have no time for rebuttals, so you have ten minutes. Thank you, Your Honor, and I apologize for the lateness this morning. My name is Roy Breitenbach and I represent the appellants in this case, Long Island Anesthesiologists. We believe that the complaint at issue below plausibly alleges the required harm to competition necessary to establish antitrust injury in this circuit. What is the market in this case? That's the key in all of these cases. Absolutely, Your Honor. I think there are two markets here, okay, because you have to look at it from the standpoint of the markets in which the anesthesiologists compete, right? Why? Well, because they compete in two central markets, the downstream market to provide That's just an injury to, that may be an injury, that's not a normal antitrust injury, I mean, you know, an antitrust market is usually the people who, the market of the people who are being sued for the antitrust violation and whether they are in that market, they are distorting the market or they're using unlawful power to do it, that kind of thing. And this is a buyer's market, it seems to me, not a seller's market. And the buyers are the insurance companies. Well, that is correct, Your Honor. But what we're saying is the anesthesiologists compete in two separate markets, right? Related, they compete in the market for the delivery of anesthesia services to patients, inpatients in these various hospitals. And they're having trouble getting reimbursed. They're having trouble getting reimbursed. But worse than that, Your Honor, the rate is so low as to create issues regarding a reduction in output, which we believe The harm has to be, for it to be an antitrust injury, a lower rate is not enough. I think you recognize that. Absolutely. It's from some anti-competitive conduct that you're alleging. And I'm having a hard time understanding what, when a buyer says, I want a lower rate, what's the anti-competitive conduct that would cause an antitrust injury? Well, in here, it's that the rate is so low, they're aware that it's so low, that it's put a significant squeeze on the anesthesiologist. And it's a below-market rate that is competitively harmful. Why do you not just open your competition? Well, Your Honor, in many cases it would be. But there's a unique situation here, as we allege, that it's part of a concerted scheme by UnitedHealthcare to reduce the rates to such, such that they can force anesthesiologists out of the market. Okay? So therefore, they can reap ultimately super-competitive profits. And what we're alleging is, is that They can, they can, they're not, they're not forcing them, the market that you're just talking about now is the market for the anesthesiologists. So you shift back and forth between markets. We started off talking about the buyer's market. And the buyer's market is competition, free competition to set rates as buyers. And it seems to be that that, that is really what, what the issue is here. And I don't see how that's, how there's antitrust problem. Because isn't this really a, just simply an operation of the market? Normal operation of the market without any competitive conduct. Well, Your Honor, but the reality also is that the anesthesiologists have no ability to, I mean, they have to, this is not a situation where the anesthesiologists can say, well, then we're not going to accept any patients from UnitedHealthcare. But things were a lot better before the No Compete, No Surprise Act in 2022. And it seems to me that your gripe is really with that act. That's what caused all of this problem. Not the activities of the insurance company. Well, Your Honor, we think that the No Surprise Act was one of the factors that has caused this anti-competitive scheme to move forward. So we believe that it is a series of issues. And what has happened is we have no ability to go to another buyer. But that's not their fault, right? If they're following the federal act, that's not their fault, right? That this has made it more difficult for you or reduced the rates? Well, yes, they are following the federal act, Your Honor. But they are actually putting the squeeze on us by preventing us from, you know, as we've alleged in the complaint, invoking the independent dispute resolution process by having a scheme in which they're offering very low rates and they're, in fact, preventing us through pressure from pursuing IDR. So while the act is not their fault, the act they've basically taken advantage of that act in order to put the anti-competitive squeeze on us. And that's what our allegations are. So if the panel has no further questions, we'll rest on our brief. Thank you. All right, Mr. Hatchett, you're up. Good morning, Your Honors. Andrew Hatchett. I'm counsel for UnitedHealthcare. I'm joined at counsel's table today by my son. Am I doing this? Let's see. Did we fix it? Sorry. Sounds good. Andrew Hatchett, counsel for UnitedHealthcare. I'm joined at counsel's table today by Taylor Kruziak, who's counsel for MultiPlan. We've reserved just five minutes for response, and I don't think I'll need all of that time today. The district court correctly identified at least five independent reasons why the plaintiff's antitrust claims fail. Several of those reasons, antitrust injury, the failure to define a relevant market that matches the antitrust claims, cut across both the Section 1 and the Section 2 theories. And then in addition to those defects, the court identified several independent defects with each of the individually pledged claims. If this court finds that any of those are well taken, it can affirm. And we, of course, believe that all of those arguments and reasons are well taken. With the very limited time that I have. I mean, they would need to allege if they're bringing a monopsony claim, they need to allege a buy-side market, and so the relevant market would be a. Monopsony of a monopoly? No, they're not. They're only bringing a monopsony claim, and so it would need to be a buy-side market. It would need to be the market for the reimbursement of anesthesia services, not for the provision of anesthesia services. And the one point that I want to add today is that I know we've talked in our brief about the parallel State court litigation, and I don't want to get into the questions of issue preclusion or collateral estoppel, but there was a finding in the parallel State court litigation where LIA was a plaintiff, which is that United does not control the reimbursement decisions. So there's another defect with this case, which is that United isn't even the buyer. It's a third-party administrator, and so not only have they not alleged a relevant market on the buy-side, United isn't even the buyer. The Empire Plan is the buyer, and that's an established fact. Whether it's issue preclusion or otherwise, that's a fact that I don't think that they can dispute or would dispute in this case, and it's going to lay over the top of the antitrust claims in this case. Is LIA compelled to use United as their insurer? Is there a compulsion, any compulsion? I mean, would they be free to go to another insurer? Well, I mean, this is kind of semantics. In this case, United isn't even the insurer. It's a third-party administrator. The insurer is what? Is Empire, is that it? Is the Empire Plan. Yeah. Would they be free to go to somebody else? Go to a financial insurer? Well, so in this case, we're talking about out-of-network anesthesia services, and so these are circumstances where LIA anesthesiologists are working in the hospital. A patient comes in. They're probably in-network for the physician but out-of-network for the anesthesiologist. And so that's why we have the statute was created, was to deal with these sort of circumstances. That's the other thing coming out of the Joseph case is that the court, the state court, in a final decision now has concluded that the Empire Plan is subject to the Federal No Surprises Act, which means that everything they were complaining about here is not a – I mean, in their complaint, they say it's wrong to apply that, but the state court has said it was correct to apply that. So that is the statutory regime that applies to the Empire Plan, and that also is another reason that antitrust claims would be foreclosed. Yeah. Thank you. All right. Thank you both. It was a reserved decision. Have a good day.